IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FELIPE GARCIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 16-00635-CG-B |
| | ) |
| CERTAIN UNDERWRITERS AT | ) |
| LLOYD'S, LONDON, et al., | ) |
| | ) |
| Defendants. | ) |

# ORDER

This matter is before the Court on the Defendants Certain Underwriters at Lloyds, London et. al.'s ("Defendants") motion for judgment on the pleadings and brief in support of (Docs. 58 & 59), Plaintiff Felipe Garcia's ("Plaintiff") response (Doc. 72), and Defendants' reply (Doc. 73). Also before the Court is Defendants' motion for summary judgment and brief in support of (Docs. 62 & 63), Plaintiff's opposition thereto (Doc. 70), and Defendants' reply (Doc. 75). Defendants have also moved this Court to strike Plaintiff's expert designations and preclude expert testimony (Docs. 60 & 61).

For the reasons explained below, the Court finds that Defendants' motion for judgment on the pleadings is due to be denied. Defendants' motion for summary judgment is due to be granted and Defendants' motion to strike Plaintiff's expert designations and preclude expert testimony is moot.

1

## I. Background

In 2006, Plaintiff purchased a warehouse at 3002 Mill Street in Mobile, Alabama. (Doc. 70, p. 3). Plaintiff insured the warehouse with a Commercial Property policy ("the Policy") issued by Defendants. *Id*. The "Limit of Insurance" on the policy is $573,200.00 subject to a 5% wind deductible (or $28,660.00). (Doc. 32-1, p. 7).

On December 25, 2012, the warehouse sustained roof and water damage from a tornado. (Doc. 70, p. 4). The day after the storm, Plaintiff contacted his insurance agent to report the damage and assert a claim. (Doc. 71-2, p. 4). Plaintiff's agent then reported the claim to the selling broker, who subsequently reported it to Defendants' Third Party Administrator, Engle Martin. (Doc. 70, p. 4-5).

After Plaintiff reported his claim, Nan Seay ("Seay"), a claims specialist for Engle Martin, retained Bryan Watts ("Watts"), a field adjuster, to physically inspect the property. *Id*. at p. 5. Watts was responsible for documenting the damage, preparing an estimate for the cost of repair, and scoping the claim. *Id*. Watts visited the site, in the presence of Plaintiff, on December 28, 2012, and documented the damage. Watts photographed the roof and water damage and prepared a report enclosing the costs to repair the damage. (Doc. 64-4). Watts determined the repair cost of Plaintiff's warehouse was $2,858.03. (Doc. 64-6, p. 6 ¶ 14). Because that price fell below the Policy's wind deductible, Defendants sent Plaintiff a letter on May 6, 2013, declining payment on the basis that there was no payable loss. (Doc. 64-7, p. 1). Plaintiff never informed Defendants that he disagreed with the estimated repair

2

costs until approximately more than three years later, on August 11, 2016, when Plaintiff's counsel sent Defendants' claims specialist a letter attaching two estimates. (Doc. 71-3). The first estimate, dated 5/2/16, from Charlie Lammons at Dobson Sheet Metal & Roofing & Specialties, Inc., estimated the costs of labor, materials, equipment, insurance, permits and taxes to make repairs to the roof to be $80,545.00. (Doc. 71-3, p. 6). The second estimate, dated 6/10/16, from Christopher A. Smith at Lanier Construction, Inc, estimated certain construction costs to be $143,085.00. Neither estimate gave an indication that the proposed repairs and construction had any connection to the storm damage caused in 2012, nor did either say when the examination of the premises for these estimates took place. Counsel's letter represented that they were for repairs of damage from the storm, but at least the construction estimate clearly contained items unrelated to the storm damage, including plumbing for a future kitchen and architect fees and plans.

Plaintiff disagrees with Defendants' contention that the damages are less than the wind deductible. (Doc. 70, p. 7). Based on these estimates, Plaintiff contends the cost to repair the storm damage is $223,630.00. *Id*.

Plaintiff filed this breach of contract action for Defendants' alleged failure to pay for Plaintiff's direct physical loss.

## II. Motion for Judgment on the Pleadings
## A. Standard of Review

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are

3

closed—but early enough not to delay trial—a party may move for judgment on the pleadings." *See* FED. R. CIV. P. 12(c). "Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Douglas Asphalt Co. v. Qore, Inc.,* 541 F.3d 1269, 1273 (11th Cir. 2008) (citing *Cannon v. City of W. Palm Beach,* 250 F.3d 1299, 1301 (11th Cir. 2001)). "A motion for judgment on the pleadings is subject to the same standard as [a] Rule 12(b)(6) motion to dismiss." *Provident Mut. Life Ins. Co. of Philadelphia v. City of Atlanta,* 864 F. Supp. 1274, 1278 (N.D. Ga. 1994).

A claim should not be dismissed under Federal Rule of Civil Procedure 12(c) if it contains sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which

4

it rests." *Twombly,* 550 U.S. at 555 (internal quotation marks and citation omitted).

**B. Analysis**

Defendants assert the Complaint (Doc. 1-1) is devoid of allegations to sufficiently support Plaintiff's breach of contract claim. (Doc. 59, p. 4). The elements of a breach of contract claim under Alabama law are "(1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Moore v. Seterus, Inc.*, 2017 WL 4708163, *4 (11th. Cir. Oct. 19, 2017) (citing *Shaffer v. Regions Fin. Corp.*, 29 So.3d 872, 880 (Ala. 2009)). Defendants argue that Plaintiff has failed to allege the second prong of the contract claim – i.e. Plaintiff's "own performance under the insurance contract; or, stated another way, his own compliance with the policy's conditions precedent." (Doc. 59, p .4).

Conditions precedent are "fact[s] (other than the lapse of time) that, unless excused, must exist or occur before a duty of performance of a promise arises." *Shufford v. Integon Indem. Corp.*, 73 F.Supp.2d 1293, 1299 (M.D. Ala. 1999) (citation omitted). They "may relate either to formation of a contract or to liability under it." *Id.* In pleading conditions precedent, Plaintiff must "allege generally that all conditions precedent have occurred or been performed." FED. R. CIV. P. 9(c) ("Rule 9(c)").

Defendants assert Plaintiff has failed to make any general allegations that all conditions precedent have been fulfilled. (Doc. 59, p. 5). They argue that their duty under the policy does not arise until conditions precedent are met so Plaintiff's

5

demand for recovery must allege that all the conditions precedent have been satisfied. *Id*.

Plaintiff counters that Rule 9(c) does not expressly require that he plead the performance or occurrence of conditions precedent; the rule merely describes *how* the conditions are to be pleaded. (Doc. 72, p. 10). Furthermore, Plaintiff emphasizes that Defendants' argument "is a matter of proof, not pleading." (Doc. 72, p. 10).

The parties' competing arguments are representative of a split in authority among courts regarding the reading of Rule 9(c). As Plaintiff argues, some circuits do not require plaintiffs to plead conditions precedent. *Mendez v. Bank of America Home Loan Servicing, LP*, 840 F.Supp.2d 639, 647-51 (E.D. N.Y. 2012) (citation omitted). However, Defendants' argument is in line with courts in other circuits that have imposed the requirement to plead. *See, e.g., YWCA v. All State Ins. Co. of Canada*, 158 F.R.D. 6, 8 (D.D.C. 1994). Overall, there is relatively little case law interpreting Rule 9(c) – and the Court knows of no Eleventh Circuit case passing on the matter[1] – perhaps because the language of the rule is so straightforward. *See Ackerley Media Group, Inc. v. Sharp Electronics, Corp.*, 170 F.Supp.2d 445, 453 (S.D. N.Y. 2001); *See also Miracle Marketplace LLC v. Ulta Salon Cosmetics & Fragrance, Inc.*, 2009 WL 10669190, *3 (S.D. Fla. Dec. 10, 2009). Accordingly, in

---

[1] In their Reply (Doc. 73), Defendants cite *Jackson v. Seaboard*, 678 F.2d 992 (11th Cir. 1982) for the proposition that the controlling case law requires Plaintiff to plead conditions precedent. However, in *Jackson*, the Eleventh Circuit held that, in the context of Title VII of the Civil Rights Act of 1964, a plaintiff must exhaust his or her administrative remedies as a condition precedent to bringing a judicial complaint. That authority, however, is not helpful in this case where no administrative prerequisite exists to bringing Plaintiff's breach of contract claim.

light of the aforementioned standards and lack of well-defined Eleventh Circuit precedent on Rule 9(c)'s mandates, the Court declines to grant Defendants' motion for judgment on the pleadings based on such a technical reading of Rule 9(c).

### III. Motion for Summary Judgment

### A. Standard of Review

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c) ("Rule 56(c)"). The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Bailey v. Allgas, Inc.,* 284 F.3d 1237, 1243 (11th Cir.2002) (quoting *Anderson,* 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* at 249–250. (internal citations omitted).

The basic issue before a court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson,* 477 U.S. at 251–252. The moving party bears the burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States,* 253 F.3d 1257, 1265 (11th Cir.2001). In evaluating the argument of the moving party, a court must

7

view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle Glade,* 178 F.3d 1175, 1187 (11th Cir.1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir.1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.,* 750 F.2d 838, 841 (11th Cir.1985)).

Once the movant satisfies its initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response […] must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." *Vega v. Invsco Group, Ltd.,* 2011 WL 2533755, *2 (11th Cir.2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 998

8

(11th Cir.1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Analysis**

Defendants move for summary judgment on Plaintiff's breach of contract claim arising from tornado damage sustained at Plaintiff's warehouse.

"It is well settled that an insurance policy is a contract." *Wright v. Dir., Fed. Emer. Man. Agency*, 913 F.2d 1566, 1570 (11th Cir. 1990)(internal citation omitted). As previously noted, the elements for a breach of contract claim are: "(1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Moore* at *4. There is no dispute that a valid contract existed between the parties or that Plaintiff sustained damages while the Policy was in effect. The issues are whether Plaintiff has complied with the Policy's terms to constitute performance under the contract and whether Defendants' denial of Plaintiff's claims constituted nonperformance under the contract.

**1. Plaintiff's Performance Under the Contract**

Defendants claim Plaintiff has not performed under the contract because Plaintiff did not challenge the conclusions set forth in the May 6, 2013 Letter concerning the amount of damages. (Doc. 63, p. 10); *See also* (Doc. 64-7). Plaintiff contends, however, that he did not have a contractual duty to challenge Defendants'

decision to decline payment on his claim. (Doc. 70, p. 10).

The Policy imposed the following duties upon Plaintiff:

> 3. Duties In The Event of Loss or Damage
> (a) You must see that the following are done in the event of loss or damage to Covered Property:
> (1) Notify the police if a law may have broken.
> (2) Give us prompt notice of the loss or damage. Include a description of the property involved.
> (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.
> (4) Take all reasonable steps to protect the Covered Property from further damage.
> (5) At our request, give us complete inventories of the damaged and undamaged property.
> (6) As often as may be reasonably required, permit us to inspect the property providing the loss of damage and examine your books and records…
> (7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do so within 60 days after our request. We will supply you with the necessary forms.
> (8) Cooperate with us in the investigation or settlement of the claim.
> (Doc. 32-1, pp. 36-37)

In order to show performance under a contract, a plaintiff must prove "that it substantially performed its obligations under the contract." *Superior Wall and Paver, LLC v. Gacek*, 73 So.3d 714, 721 (Ala. Civ. App. 2011)(internal citation omitted). "Substantial performance of a contract does not contemplate exact performance of every detail but performance of all important parts." *Id.* (internal citation omitted). It "is a question of fact to be determined from the circumstances of each case." *Id.* (internal citation omitted).

In this case, there is evidence that Plaintiff reported the warehouse damage the day after he sustained the property loss. (Doc. 71-2, p. 4). In the report, Plaintiff

asserted his building received wind and rainstorm damage, which included damage to the roof. *Id*. There is also evidence that Plaintiff allowed Watts to inspect the property shortly after the warehouse was damaged (Doc. 71-5, p. 70 ¶¶ 3-20), and there is no evidence Plaintiff failed to cooperate with Defendants in the investigation or settlement of the claim. While Defendants argue Plaintiff has not shown that he took reasonable steps to protect the property from further damage (Doc. 75, p. 3), Alabama law does not require performance of every detail. *Superior Wall*, 73 So.3d at 721.

Additionally, Defendants contend they are entitled to further documentation from Plaintiff during the claim investigation process before they are obligated to pay. (Doc. 63, p. 11). However, such documentation need not be provided unless Defendants *require* Plaintiff to submit it. *Id*. The record evidence does not indicate, nor do Defendants assert, that they ever made such a request or demand upon Plaintiff to comply with that requirement.

Accordingly, the Court finds that the evidence is sufficient to create a genuine issue of material fact as to whether Plaintiff substantially performed his obligations under the contract. Therefore, summary judgment is inappropriate on this issue.

**2. Defendants' Nonperformance Under the Contract**

Defendants' obligation under the Policy is to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (Doc. 32-1, p. 28). However, the Policy includes a provision for "Windstorm or Hail Percentage Deductible," which is

an endorsement that modifies the insurance and changes the policy. *Id*. at p. 45. The Windstorm or Hail Deductible Clause states that Defendants "will not pay for loss or damage until the amount of loss or damage exceeds the applicable deductible." *Id*.

The limit of insurance on the Policy was $573,200, which was subject to a 5% wind deductible (or $28,660). *Id*. at p. 7. Defendants determined Plaintiff's replacement cost value was $2,858. 03, which is less than the Policy's deductible. (Doc. 64-6, p. 6 ¶¶ 13-14). However, Plaintiff asserts the cost to repair the damage is $234,775. 79, which is above the Policy's deductible. (Doc. 70, p. 1 ¶ 1; Doc. 69-3, pp. 1-4).

Plaintiff unpersuasively argues that Defendants' nonperformance is evidenced by the mere fact that Defendant declined payment on Plaintiff's claim. (Doc. 70, p. 12). In support of this contention, Plaintiff cites only the Policy's "Coverage" provision requiring Defendants to pay for physical loss or damage. (Doc. 70, p. 11). However, Courts are not to "consider the language in the policy in isolation, but must consider the policy as a whole." *State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 309 (Ala. 1999). An examination of the Policy as a whole, specifically with the wind deductible provision, further renders Plaintiff's argument an unreasonable one. Reading the Policy as a whole, it is clear that expressly predicating payment upon a percentage negates Plaintiff's argument. To accept Plaintiff's reasoning would be to wholly contradict the plain language of the deductible, and to disregard the obvious intent of the Policy as a whole. Accordingly,

the Policy did not intend for Defendants to pay Plaintiff for windstorm damage unless the cost exceeded the 5% wind deductible (or $28,660).

Defendants argue they were not required to pay Plaintiff because the cost to repair the damage to Plaintiff's building was only $2,858. 03. (*See* Doc. 64-6). Defendants' expert, Watts, submitted the basis for his findings and conclusions in an expert report. *Id*.

To dispute the cost of repair damage, Plaintiff relies on the estimates from the roofing company and the construction company, but those documents, in and of themselves, do not create fact issues. The only evidence in the record supporting Plaintiff's argument is the two itemized estimates. Plaintiff submitted no affidavits or other documents from either Lammons or Smith, the persons who signed the estimates. Without more, both of the estimates are inadmissible hearsay and cannot be considered on a motion for summary judgment. *See Macuba v. Deber*, 193 F. 3d 1316, 1323 (11th Cir. 1999); *See also* FED. R. EVID. 802. Plaintiff has made no showing that the information in those estimates can be converted to admissible testimony.

Even if this Court were to consider the estimates, they do not help Plaintiff. The estimates do not "identify on what information [they are] based and [they do] not tie the repairs to the [storm] damage." *Matthews v. State Farm Fire and Cas. Co.*, 500 Fed.Appx. 836, 841 (11th Cir. Dec. 6, 2012).

Plaintiff has taken the position that this is a "simple dispute over the costs to repair the damage caused by the Christmas day tornado," but Plaintiff has no

13

admissible evidence disputing that cost. In the absence of such evidence, Plaintiff cannot make "a showing sufficient to establish the existence of an element essential to [their] case." *Celotex*, 477 U.S. at 322. Therefore, Defendants' motion for summary judgment is due to be granted.

## CONCLUSION

For the reasons stated above, Defendants' motion for judgment on the pleadings is **DENIED**. Because the Court finds that there is no genuine dispute as to any material fact, and that Defendants are entitled to judgment as a matter of law. Accordingly, Defendants' motion for summary judgment is **GRANTED**. Defendants' motion to strike Plaintiff's expert designations and preclude expert testimony (Doc. 60) is **MOOT**.

**DONE** and **ORDERED** this 6th day of February, 2018

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE